UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOACHIM SYLVESTER,

          Plaintiff,

      v.                                                    22-CV-151-LJV
                                                              DECISION & ORDER
ANTHONY ANNUCCI, et al.,

          Defendants.

_____

On February 22, 2022, the pro se plaintiff, Joachim Sylvester, commenced this action under 42 U.S.C. §§ 1981, 1983, and 1985. Docket Item 1. He alleges that the defendants—Anthony Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Corrections Officers Adam Ripley, Kyle Ramirez, and Megan Naida; and Corrections Lieutenant Trevor Schadewald—violated his rights in January 2019 when he was confined at the Elmira Correctional Facility ("Elmira"). Id. On May 4, 2023, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), Docket Item 14; on July 10, 2023, Sylvester responded, Docket Item 18; and on July 20, 2023, the defendants replied, Docket Item 19.

For the following reasons, the defendants' motion to dismiss is granted in part and denied in part. In addition, in light of Sylvester's pro se status, the Court grants Sylvester leave to amend his complaint to correct several of the deficiencies outlined below.

## BACKGROUND[1]

On January 7, 2019, Corrections Officers Ripley and Ramirez searched Sylvester's cell at Elmira.  Docket Item 1 at ¶ 1.  Afterwards, the two officers filed a misbehavior report, charging Sylvester with possessing a weapon, an altered item, and excessive tobacco.  *Id.*  Two days later, on January 8, 2019, Officer Naida again searched Sylvester's cell and filed a misbehavior report charging Sylvester with drug possession.  *Id.* at ¶ 2.  Sylvester was not present for either search.  *Id.* at ¶ 3.

Sylvester pleaded not guilty to the four charges in the two misbehavior reports, and he was given a disciplinary hearing before Lieutenant Schadewald.  *Id.* at ¶ 4.  At the hearing, Sylvester told Schadewald that he was not present for either search.  *See id.* at ¶ 6.  Schadewald nevertheless found Sylvester guilty of all four charges, and Sylvester spent 365 days in Elmira's special housing unit as a result.  *Id.* at ¶¶ 5, 20.  Schadewald also revoked Sylvester's package, commissary, and telephone privileges for 312 days, as well as his visitation privileges for 60 days.  *Id.*

Sylvester appealed the result of his disciplinary hearing to Commissioner Annucci, arguing that his convictions should be annulled and expunged because the searches were performed outside his presence.  *Id.* at ¶ 6.  Sylvester's appeal was

---

[1] In deciding a motion to dismiss, a court "accept[s] all factual allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the complaint, Docket Item 1, and any documents upon which it relies or of which the Court may take judicial notice on a motion to dismiss, *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

denied.  *See id.*  Sylvester then filed a petition in state court pursuant to Article 78 of

New York's Civil Practice Law and Rules.[2]  *Id.* at ¶ 7.

The New York State Supreme Court, Appellate Division, Third Department,

vacated two of the four findings.  *See In re Sylvester v. Annucci*, 131 N.Y.S.3d 722, 186

A.D.3d 1857 (3d Dep't 2020).[3]  More specifically, the court found that "with respect to

the charges of possessing a weapon and possessing an altered item[,] . . . the findings

of guilt as to those charges should be annulled and all references thereto expunged

from [Sylvester's] institutional record on the ground that [he] was not present during all

of the search of [his] cell before the weapon was discovered."  *Id.*, 186 A.D.3d at 1858.

As for the charges of excessive tobacco and drug possession, the Third Department

found that substantial evidence supported the findings of guilt.  *See id.*  But on

---

[2] "Unlike an ordinary civil action . . . , the substantive scope of an Article 78 proceeding is limited."  *Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024) (citation modified); *see Davis v. Halpern*, 813 F.2d 37, 38 n.1 (2d Cir. 1987) ("In New York, Article 78 is a method for challenging state administrative action.").  The only questions that may be raised in an Article 78 proceeding are: (1) "whether the body or officer failed to perform a duty enjoined upon it by law"; (2) "whether the body or officer proceeded, is proceeding[,] or is about to proceed without or in excess of jurisdiction"; (3) "whether a determination was made in violation of lawful procedure, was affected by an error of law[,] or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed"; or (4) "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the record, supported by substantial evidence."  N.Y. C.P.L.R. § 7803.

[3] The Third Department's decision is a public record of which this Court may take judicial notice on a motion to dismiss.  *See, e.g.*, *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) (concluding that "the district court did not err in considering [the appellant's] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice." (citation modified)); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

November 12, 2020, the finding of drug possession was annulled in the "interest of fairness due to an inconsistency in the manufacturer's instructions pertaining to the [drug] testing kit."  Docket Item 1 at ¶ 8 (citation modified).

All told, Sylvester spent a year in Elmira's special housing unit and lost other privileges based on findings of guilt on four charges, three of which were set aside.

## LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 12(b), a case may be dismissed, among other reasons, for "lack of subject matter jurisdiction" or for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(1), (6).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id*.  "Although courts hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers, pro se litigants still must establish subject matter jurisdiction to proceed in federal court."  *Harrison v. New York*, 95 F. Supp. 3d 293, 311 (E.D.N.Y. 2015) (citation modified).

A case may be dismissed for failure to state a claim under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at

4

556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

Sylvester brings claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as intentional tort claims under New York law.  *See* Docket Item 1 at 3-8.  According to Sylvester, the defendants injured him, discriminated against him, and deprived him of his constitutional rights when they confined him to Elmira's special housing unit without due process.  *See id.*

The defendants advance several arguments why Sylvester's complaint should be dismissed in its entirety.  *See* Docket Item 14-1 at 5-16.  First, they argue that the section 1983 claims should be dismissed because Sylvester fails to plausibly allege a deprivation of his constitutional rights under either the Fourth or Fourteenth Amendment.  *See id.* at 5-11.  Second, they argue that the section 1981 and 1985(3) claims should be dismissed because Sylvester does "not plead facts from which it can be plausibly inferred that the [defendants'] conduct was motivated by racial animus." *See id.* at 11-13.  And third, they argue that Sylvester's intentional tort claims should be dismissed because section 24 of New York's Correction Law deprives this Court of jurisdiction over those claims.  *See id.* at 13-15.

As discussed below, the Court agrees with the defendants that Sylvester's section 1981, section 1985(3), and intentional tort claims should be dismissed.  It also agrees with the defendants that Sylvester's section 1983 claims against Annucci, Ripley, Ramirez, and Naida should be dismissed as well.  But the Court disagrees with

the defendants regarding Sylvester's section 1983 procedural due process claim against Schadewald.

## I.    SECTION 1981

Section 1981 provides in relevant part that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a) (citation modified).  Section 1981 claims against state actors, however, may be pursued only under section 1983.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) ("The express action at law provided by [section] 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution or laws[] provides the exclusive federal damages remedy for the violation of the rights guaranteed by [section] 1981 when the claim is pressed against a state actor." (citation modified)); *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (holding that section 1981 "does not provide a separate private right of action [apart from section 1983] against state actors.").

There is no question that the defendants in this case are state actors.  *See, e.g.*, *Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) ("Obviously, state officials and state employees are considered state actors."); *see also Morris v. NYS Dep't of Corr. & Cmty. Supervision*, 2024 WL 4252049, at *9 (N.D.N.Y. Sept. 20, 2024) (recognizing that DOCCS employees are state actors who may be sued under

section 1983).  Sylvester's section 1981 claims therefore are dismissed as duplicative of his section 1983 claims.

## II.    SECTION 1983

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under [section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

In his complaint, Sylvester does not articulate claims under any specific constitutional provision.  *See* Docket Item 1 at 3-8.  Given Sylvester's pro se status, however, the Court broadly construes his complaint to allege claims grounded in the procedural due process and equal protection provisions of the Fourteenth Amendment.[4]

---

[4] The defendants construe Sylvester's complaint as also alleging a Fourth Amendment claim.  *See* Docket Item 14-1 at 9-11.  But the Fourth Amendment does not apply in this context because prisoners do not have a reasonable expectation of privacy in their cells.  *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992).  The Court therefore does not construe Sylvester's complaint to allege a Fourth Amendment claim.

In his response to the defendants' motion to dismiss, Sylvester makes passing reference to the Eighth Amendment and the Supreme Court's decision in *Gregg v. Georgia*, 428 U.S. 153 (1976).  *See* Docket Item 18 at ¶ 14 (asserting that "the Eighth Amendment prohibits the unnecessary and wanton infliction of pain, including punishments that are totally without penological justification." (citation modified)).  But Sylvester does not suggest that the defendants "fail[ed] to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety," *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (citation modified), or exposed him to conditions "pos[ing] an unreasonable risk of serious damage to his future health," *see Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Nor

*See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("Courts must construe pro se pleadings broadly[] and interpret them to raise the strongest arguments that they suggest." (citation modified)).

### A.    Procedural Due Process

The Fourteenth Amendment's due process clause "prohibits states from 'depriving any person of life, liberty, or property without due process of law.'" *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (citation modified) (quoting U.S. Const. amend. XIV, § 1).  "In a prison disciplinary hearing,[5] due process . . . provide[s] that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him[,] and afforded a reasonable opportunity to explain his actions." *Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (citation modified).  "More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present

---

does he suggest that the defendants subjected him to conditions of confinement with a "sufficiently culpable state of mind,"—that is, with "deliberate indifference to [his] health or safety."  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation modified).  Rather, he asserts that he was punished without the process due to him and because of his race.  Therefore, the Court does not construe Sylvester's complaint to allege a claim under the Eighth Amendment.

    5 "A prisoner's liberty interest is implicated when an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  *Luna v. Pico*, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The defendants do not dispute that Schadewald's decision to confine Sylvester to Elmira's special housing unit for a year resulted in an "atypical and significant hardship" implicating Sylvester's due process rights.  *See generally* Docket Item 14-1 at 6-8; Docket Item 19 at 2-4; *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (holding that "confinement in normal [special housing unit] conditions for 305 days is . . . a sufficient departure from the ordinary incidents of prison life to require procedural due process protections" (citation modified)).

documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citation modified).

The complaint does not allege any procedural deprivations, but in response to the defendants' motion to dismiss,[6] Sylvester asserts that Schadewald was not a fair and impartial hearing officer because Schadewald "was on E Block outside [Sylvester's] cell while it was being frisked." *See* Docket Item 18 at ¶ 7. DOCCS Directive 4932 prohibits individuals who witnessed, participated in, or investigated an incident giving rise to a disciplinary hearing from presiding over that hearing. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 254.1 (1990).[7] So Sylvester says that his procedural due process rights were violated when Schadewald refused to recuse himself as the disciplinary hearing officer. *See* Docket Item 18 at ¶¶ 4, 13.

"An inmate subject to a disciplinary hearing is entitled to . . . an impartial hearing officer." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990) (citing *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974)). On the other hand, "it is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citation modified). In the Second Circuit's view, "an impartial decisionmaker is one

---

[6] Although "it is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss," *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) (citation modified), "a district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citation modified).

[7] A court may take judicial notice of a DOCCS directive on a motion to dismiss. *See, e.g.*, *Young v. Corcoran*, 164 F. Supp. 3d 419, 420-21 (W.D.N.Y. 2016).

who . . . does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson*, 905 F.2d at 570.

Viewing the factual allegations in the light most favorable to Sylvester, as this Court must on a motion to dismiss, *see Iqbal*, 556 U.S at 678, Schadewald either witnessed or participated in the searches of Sylvester's cell and thus had personal knowledge about what was found. *See* Docket Item 18 at ¶ 7. But Schadewald nevertheless refused to recuse himself as Sylvester's disciplinary hearing officer even though DOCCS Directive 4932 precluded his serving in that capacity. *See id*. at ¶¶ 4, 13. Moreover, Sylvester was punished for possessing a weapon and an altered item, but those items were found during a search that a state court concluded was improper for some reason. *See In re Sylvester*, 186 A.D.3d at 1858. At this stage, that is enough to suggest that Schadewald had "prejudge[d] the evidence" against Sylvester at the disciplinary hearing and accordingly was not a fair and impartial hearing officer. *See Patterson*, 905 F.2d at 570. Sylvester therefore has plausibly alleged a procedural due process claim against Schadewald.

But Sylvester's remaining procedural due process claims do not pass muster. It is not enough that Annucci denied Sylvester's disciplinary appeal. *See, e.g.*, *Brown v. Annucci*, 2021 WL 860189, at *9 (S.D.N.Y. Mar. 8, 2021) (concluding that a denial of a prison disciplinary appeal alone is insufficient to establish personal involvement for purposes of a procedural due process claim); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (holding that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the constitution.'" (quoting *Iqbal*, 556 U.S. at 676)). Nor is it enough that Ripley,

Ramirez, or Naida might have planted evidence Sylvester's cell, filed false misbehavior reports, and then lied to Schadewald during Sylvester's disciplinary hearing.  *See Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) (summary order) ("The issue of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process[;] [r]ather, such action violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights." (citation modified)). Accordingly, Sylvester has failed to plausibly allege procedural due process claims against Annucci, Ripley, Ramirez, or Naida.

### B.    Equal Protection

The Fourteenth Amendment's equal protection clause "prohibits states 'from deny[ing] to any person within [their] jurisdiction the equal protection of the laws.'" *Chinese Am. Citizens Alliance of Greater N.Y. v. Adams*, 116 F.4th 161, 170 (2d Cir. 2024) (quoting U.S. Const. amend. XIV, § 1).  That clause's "'central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race.'"  *Id.* (quoting *Shaw v. Reno*, 509 U.S. 630, 642 (1993)).

"An individual may assert either a 'class of one' or a 'selective enforcement' equal protection claim."  *Jones v. Cuomo*, 542 F. Supp. 3d 207, 223 (S.D.N.Y. 2021). "Under either theory, an individual must demonstrate that he was treated differently from other [similarly situated] individuals."  *Id.* (citing *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)); *see Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019) ("While [a class

of one claim] requires an extremely high degree of similarity between a plaintiff and a comparator, [a selective enforcement claim] merely requires a reasonably close resemblance between a plaintiff's and comparator's circumstances." (citation modified)).

Sylvester alleges the defendants denied him equal protection of the law by confining him to Elmira's special housing unit because of his race. *See* Docket Item 1 at ¶¶ 11-13. But Sylvester does not articulate any facts from which a reasonable juror could reach that conclusion. For example, he does not point to white prisoners who were treated differently or other prisoners whose possession of contraband resulted in lesser penalties. *See, e.g.*, *A'Gard v. Perez*, 919 F. Supp. 2d 394, 406 (S.D.N.Y. 2013) (dismissing equal protection claims as wholly conclusory where amended complaint "state[d] no facts demonstrating that the plaintiff was treated differently from similarly situated inmates who violated prison regulations."); *see also Hu*, 927 F.3d at 91 ("A plaintiff cannot merely rest on a demonstration of different treatment . . . [but] must prove that the disparate treatment was *caused by* the impermissible motivation." (citation modified)). Sylvester therefore has failed to state a viable equal protection claim.

## III.    SECTION 1985

Section 1985(3) provides that "if two or more persons in any State or Territory conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3) (citation modified). To state a claim

under section 1985(3), "a plaintiff [must] allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation modified).  Further, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  *Id.* (citation modified).

Sylvester's section 1985(3) claims here are barred by the intracorporate conspiracy doctrine, however.  *See Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70-72 (2d Cir. 1976); *Warr v. Liberatore*, 270 F. Supp. 3d 637, 651 (W.D.N.Y. 2017). "Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [his or] her employment, are legally incapable of conspiring together."  *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citation modified).  In other words, "the intracorporate conspiracy doctrine bars conspiracy claims against employees of entities such as DOCCS (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed."  *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) (citation modified) (collecting cases).

Sylvester does not allege that any of the defendants had a personal interest in ensuring his confinement to Elmira's special housing unit, so he cannot take advantage

13

of the scope of employment exception to the intracorporate conspiracy doctrine. *See, e.g.*, *Vega v. Artus*, 610 F. Supp. 2d 185, 206 (N.D.N.Y. 2009) (dismissing section 1985(3) claims against DOCCS employees as barred by the intracorporate conspiracy doctrine where the plaintiff "d[id] not allege facts plausibly suggesting that each [of the defendants] possessed an independent personal purpose, but merely allege[d] that their actions were motivated by their personal bias against homosexuality."). As such, Sylvester's section 1985(3) claims are dismissed.

## IV.    INTENTIONAL TORTS

Section 24 of New York's Correction Law provides that "no civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of [DOCCS] . . . , in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." N.Y. Correct. L. § 24(1) (citation modified). The statute further provides that "any claim for damages arising out of any act done or the failure to perform any act within the scope of employment in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state." *Id.* § 24(2) (citation modified). "This provision, by its plain terms, precludes the assertion of [state law] claims against corrections officers in any court, including the federal courts." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996); *see Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) ("The Second Circuit has held that [section 24 of New York's Correction Law] prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983.").

14

Sylvester alleges that the defendants wrongfully caused his confinement to Elmira's special housing unit, "thereby committing intentional torts actionable under New York . . . law." *See* Docket Item 1 at 5 (citation modified). But section 24 of New York's Correction Law deprives this Court of jurisdiction to consider those state law claims because Sylvester cannot reasonably contend that the defendants acted outside the scope of their employment with DOCCS. *See, e.g.*, *Cruz v. New York*, 24 F. Supp. 3d 299, 309-10 (W.D.N.Y. 2014) (dismissing assault and battery claims stemming from allegedly unprovoked attack by two DOCCS officers as barred by section 24 of New York's Correction Law); *see also Cepeda v. Coughlin*, 513 N.Y.S.2d 528, 128 A.D.2d 995, 997 (3d Dep't 1987) ("Custody and control of inmates and the maintenance of prison safety and security are the primary duties and responsibilities of correction officers."). Sylvester's state law intentional tort claims therefore are dismissed.

## V.    LEAVE TO AMEND

Finally, the Court considers whether it sua sponte should grant Sylvester leave to amend his complaint. *See, e.g.*, *Brown v. Rotenberg*, 268 F. Supp. 3d 445, 451 (W.D.N.Y. 2017). A pro se complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation modified). "Leave to amend need not be granted, however, where the proposed amendment would be futile." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (citation modified); *see Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 264 (E.D.N.Y. 2014) ("An amendment is considered futile if it could not

defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction.").

Granting Sylvester leave to amend his section 1981 claims would be futile here because he may not pursue those claims against the individual defendants given the availability of section 1983. *See, e.g.*, *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019). The same is true regarding Sylvester's state law intentional tort claims over which this Court lacks jurisdiction. *See, e.g.*, *Brown v. Dep't of Corr. Servs.*, 2011 WL 2182775, at *8-9 (W.D.N.Y. June 2, 2011). But granting Sylvester leave to amend his section 1983 and 1985(3) claims would not be futile because he may be able to articulate facts that would allow those claims to survive a motion to dismiss. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (explaining that courts "should not dismiss [a] complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met." (citation modified) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))). Accordingly, the Court grants Sylvester leave to amend his section 1983 and 1985(3) claims to correct any deficiencies addressed above if he wishes to do so.[8]

---

[8] Sylvester is advised that should he choose to file an amended complaint, he must reallege his section 1983 procedural due process claim against Schadewald because "it is well established that an amended complaint . . . supersedes the original and renders it of no legal effect." *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1997) (citation modified).

## **CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss, Docket Item 14, is GRANTED in part and DENIED in part.  Sylvester's section 1981(a), section 1985(3), and intentional tort claims, as well as his section 1983 claims against Annucci, Ripley, Ramirez, and Naida, are dismissed.  But Sylvester may file an amended complaint within 30 days of the date of this decision and order.  If Sylvester does not file an amended complaint within 30 days, then his section 1983 procedural due process claim against Schadewald will proceed to discovery.

SO ORDERED.

Dated:   September 30, 2025
          Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE